# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FELIPE MUNIZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-17-433-G |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Felipe Muniz brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 10, hereinafter "R.\_\_"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for DIB on May 28, 2014. R. 24, 197-203. Plaintiff ultimately amended his alleged disability-onset date to November 30, 2012. R. 24, 43, 189. Plaintiff last met the insured-status requirements of the SSA on December

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

31, 2012. R. 26, 44. Following denial of his application initially and on reconsideration, Plaintiff and his attorney attended a hearing before an administrative law judge ("ALJ") on September 9, 2015. *See* R. 24, 40-58, 89, 101. The ALJ issued an unfavorable decision on December 17, 2015, and the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-8, 18-39; *see also* 20 C.F.R. § 404.955. This action for judicial review followed.

As relevant here, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 21, 2012, the original alleged onset date, through December 31, 2012, the date he was last insured for disability benefits. R. 26. At step two, the ALJ determined that Plaintiff had the following severe impairments during the relevant period: "disorders of back, discogenic and degenerative, and obesity." R. 26. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 26-27.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all his medically determinable impairments. R. 28-33. The ALJ found that, through the date

last insured, Plaintiff had the RFC to perform light work with the following additional limitations:

> [Plaintiff] could occasionally climb ladders, ropes and scaffolds; frequently stoop, avoid overhead reaching with the bilateral upper extremities; can perform tasks not requiring the reading or speaking of the English language.

R. 28; *see* 20 C.F.R. § 404.1567(b) (defining "light" work). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not a material issue. R. 33-34.

At step five, the ALJ considered whether there were jobs existing in significant numbers in the national economy through the date last insured that Plaintiff could have performed considering his age, education, work experience, and RFC. R. 34-35. Taking into consideration the hearing testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform light, unskilled occupations such as: final inspector, *see Dictionary of Occupational Titles* ("DOT") (4th rev. ed. 1991) 727.687-054, 1991 WL 679672; conveyer-line bakery worker, *see id.* 524.687-022, 1991 WL 674401; and wire bender, *see id.* 709.687-050, 1991 WL 679144. R. 34. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 21, 2012, through December 31, 2012. R. 35.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might

3

accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## DISCUSSION

Plaintiff contends that, because of his limited education and inability to communicate in English, the Commissioner failed to meet her burden of proof at step five where she identified jobs the Plaintiff could allegedly still perform despite his impairments and communication deficits. *See* Pl.'s Br. (Doc. No. 12) at 8-12.

*I.    Background*

At the administrative hearing, Plaintiff—testifying through an interpreter—stated that he received a sixth-grade education[2] in Mexico and cannot read, write, or speak

---

[2] The regulations consider a sixth-grade education to be "marginal education." A "marginal education" indicates that the individual's ability in reasoning, arithmetic, and language skills limits him or her to simple, unskilled types of jobs. 20 C.F.R. §

English. R. 42, 44, 50. The ALJ posed a hypothetical to the VE of an "individual of the claimant's age, education and work experience" who could perform the full range of light work except that such individual: (1) is unable to lift overhead "with the bilateral upper extremities," (2) is unable to "read or speak the English language," and (3) is restricted to "simple and routine tasks consistent with unskilled work." R. 53-54. The VE testified that such an individual can perform the occupations of final inspector, conveyer-line bakery worker, and wire bender. R. 54. The ALJ relied on this testimony to determine, at step five, that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." R. 34-35.

When the ALJ asked the VE if her testimony was consistent with the DOT, the VE answered, "Yes," but she noted the DOT does not differentiate the ability to "reach" in different directions. R. 55. Neither the VE nor the ALJ acknowledged any discrepancy between the language requirements for the identified occupations included in the DOT descriptions thereof and Plaintiff's inability to communicate effectively in English.

II.     *The ALJ's Step-Five Finding*

Plaintiff contends his marginal education and inability to communicate in English preclude him from performing the language requirements of the occupations identified by the ALJ. More specifically, Plaintiff states he lacks the ability to satisfy the Language-Level requirements identified in the DOT as necessary to perform any of the three occupations identified by the VE and adopted by the ALJ at step five. *See* Pl.'s Br. at 8-

---

404.1564(b)(2).

12. The Court agrees with Plaintiff that the ALJ's step-five finding is not supported by substantial evidence.

At step five of the sequential evaluation, "the burden shifts to the Commissioner to show that 'there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments.'" *Preciado v. Colvin*, No. CIV-14-6-HE, 2015 WL 1508917, at *4 (W.D. Okla. Mar. 31, 2015) (alteration omitted) (quoting *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005)). In making this determination, the ALJ must consider the vocational factors of age, education, and work experience. 20 C.F.R. § 404.1560(c)(1). "The vocational factor of education includes whether a claimant is illiterate and whether she has the ability to communicate in English." *Preciado*, 2015 WL 1508917, at *3. The applicable regulation states:

> (b) How we evaluate your education. . . . The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
>
> > (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
> >
> > (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
> >
> > . . . .
> >
> > (5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and

> understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 404.1564(b).

Here, despite the ALJ's RFC finding that Plaintiff cannot perform tasks that require reading or speaking in English, R. 28, and Plaintiff's undisputed testimony that he "cannot follow written or spoken instructions at all in English," R. 29, 256, the ALJ found when considering Plaintiff's education for vocational purposes that Plaintiff "is able to communicate in English." R. 34. This finding is not supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

At step five, the ALJ concluded that Plaintiff was able to perform the three occupations identified by the VE as set forth above. R. 34-35. The DOT assigns a general educational development ("GED") Language Level of 1 and a Verbal Aptitude Level 4 (lowest 1/3 excluding the bottom 10%) to two of the occupations the VE identified: conveyor-line bakery worker and wire bender. The DOT lists the requirements of Language Level 1:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT 524.687-022 (conveyor-line bakery worker); *accord id.* 709.687-050 (wire bender). The DOT assigns GED Language Level 2 with Verbal Aptitude Level 4 to the occupation of final inspector. Language Level 2 requires:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end [punctuation], and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct [punctuation], variations in word order, using present, perfect, and future tenses.

DOT 727.687-054 (final inspector). Those requirements would not be satisfied by a person who cannot read, write, or speak in English.

Defendant makes three arguments to support her contention that Plaintiff can, nevertheless, perform the occupations identified at step five. First, she argues that "Plaintiff had worked for years in the United States despite his inability to communicate effectively in English, which shows he can work despite his inability to speak English." Def.'s Br. (Doc. 16) at 6. But the ALJ did not include this rationale in her decision, and this Court may not accept counsel's post hoc rationalization for agency action. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Moreover, the fact that Plaintiff has lived and worked in the United States does not necessarily prove he can perform the occupations cited by the ALJ at step five. *See Gandarilla v. Astrue*, No. 08-cv-00375-MSK, 2009 WL 524980, at *8 (D. Colo. Mar. 2, 2009) ("[T]he mere fact that [the claimant]

had lived in the United States for approximately 22 years at the time of the hearing is not substantial evidence of [the claimant's] English language capabilities."); *id.* (noting that "context and substance" are "essential" for the court "to be able to determine [the claimant's] abilities to speak and understand English without speculation").

Second, Defendant argues that the VE's testimony stands as substantial evidence to support the ALJ's step-five finding because the VE was questioned regarding conflicts but identified no inconsistency with the DOT in this respect. *See* Def.'s Br. at 7. The clear contrast between the DOT's language requirements as to all three occupations and the relevant hypothetical including claimant's inability "to read or speak the English language," however, shows that despite the VE's failure to identify the conflict, "an apparent unresolved conflict" exists. R. 53; SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ failed to "elicit a reasonable explanation" for this conflict and failed to "resolve the conflict" as required by Social Security Ruling 00-4p. SSR 00-4p, 2000 WL 1898704, at *2; *see Preciado*, 2015 WL 1508917, at *5 (finding "a clear conflict" between being unable to read and write in English and being able to perform jobs requiring GED Language Level 2); *Beloborodyy v. Colvin*, No. 11-cv-00797-PAB, 2013 WL 5366860, at *5 (D. Colo. Sept. 25, 2013) (finding that substantial evidence did not support ALJ's decision that claimant with limited ability to communicate in English could perform jobs identified by the VE with GED Language Levels of 1 and 2 where ALJ did not provide a reasonable explanation for the conflict); *cf. Ward v. Colvin*, No. CIV-14-1141-M, 2015 WL 9438272, at *3-4 (W.D. Okla. Sept. 17, 2015) (finding ALJ erred at step five by failing to provide reasonable explanation for conflict between VE testimony and the DOT, despite

testimony of VE that no such conflict existed) (R. & R.), *adopted*, 2015 WL 9451073 (W.D. Okla. Dec. 23, 2015). Similarly, the ALJ's relevant hypothetical only addressed a claimant's inability to read or speak in English and did not take into consideration Plaintiff's inability to write or understand English. R. 53. Thus, the VE's answer to this hypothetical does not serve as substantial evidence to support the step-five determination. *See Preciado*, 2015 WL 1508917, at *5 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." (alteration and internal quotation marks omitted))).

Finally, Defendant highlights guidance in the Medical-Vocational Rules that indicates that the inability to communicate in English does not preclude a finding of nondisability for individuals of Plaintiff's age who are limited to light work:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . . The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

20 C.F.R. pt. 404, subpart P app. 2, § 202.00(g); *see* Def.'s Br. at 7-8. But the fact that an inability to communicate in English does not preclude all claimants with Plaintiff's characteristics from performing light, unskilled jobs does not constitute "such relevant evidence as a reasonable mind might accept as adequate" to support the conclusion that Plaintiff is able to perform *the three cited occupations*, all of which require some reading,

writing, and speaking in English. *Doyal*, 331 F.3d at 760 (internal quotation marks omitted). Further, the ALJ here expressly relied upon Rule 202.18, along with the VE's testimony, in reaching her step-five determination. R. 34; *see* 20 C.F.R. pt. 404, subpart P app. 2, tbl.2 r. 202.18; *see also id.* § 200.00(e)(2) (explaining that when nonexertional limitations are present, the Rules serve as a "framework" rather as a conclusive basis for a disability decision). This Rule contemplates a finding of "not disabled" when a person is "at least literate and able to communicate in English." 20 C.F.R. pt. 404, subpart P app. 2, tbl.2 r. 202.18. The ALJ's application of Rule 202.18 was most reasonably due to her vocational-factor finding that Plaintiff is able to communicate in English. As explained above, however, that finding is not supported by substantial evidence. While it is conceivable that the ALJ's consideration of a different Rule might have supported the same step-five result, the Court is not permitted to engage in such speculation. *See Haga*, 482 F.3d at 1207-08.

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

IT IS SO ORDERED this 27th day of September, 2018.

_____
CHARLES B. GOODWIN
United States District Judge

11